## KIMBERLIN ET AL. *v.* TEMPLETON ET AL.

[No. 8,040.  Filed June 17, 1913.  Rehearing denied October 31, 1913. Transfer denied December 10, 1913.]

1.  VENDOR AND PURCHASER.—*Contract for Sale of Real Estate.— Title of Vendee.—Equitable Ownership.*—Where there is a contract for the sale of real estate, the vendor simply holds the title as security for the purchase money, and the vendee becomes the equitable owner thereof so that he secures all the benefits and assumes all the risks of ownership.  pp. 160, 161.

2.  VENDOR AND PURCHASER.—*Contract for Sale of Real Estate.— Construction.*—On appeal to the equity side of the court, a contract for the sale of real estate will be so construed as not to give either party an unfair advantage.  p. 160.

3.  COVENANTS.—*Warranties Against Incumbrances.—Sewer Assessment.*—A lien for a sewer assessment, growing out of the construction of a sewer after the execution of a contract for the sale of real estate, and prior to the execution of a deed pursuant to such contract, is not covered by the covenants of warranty in such deed.  p. 161.

4.  COVENANTS.— *Warranties Against Incumbrances.— Scope.*— Although a lien created solely by operation of law after the execution of a contract for the sale of real estate is not embraced in the covenants of warranty in the deed subsequently executed pursuant to such contract, such lien, having attached, would be covered by the warranties in a deed executed by such vendee on his conveyance of such real estate.  p. 163.

From Superior Court of Marion County (78,866) ; *Vinson Carter,* Judge.

Action by Leroy Templeton against Albert C. Kimberlin and others.  From a judgment for plaintiff, the defendants Albert C. Kimberlin and James A. Wilson appeal.  *Affirmed.*

*John O. Spahr, James A. Ross, David R. Murray* and *Matson, Gates & Ross,* for appellants.

*Barrett & Barrett, Denny, Bowen & Denny, Ayres & Ayres* and *Jones, Hammond & Jones,* for appellees.

SHEA, J.—This action was brought by appellee, Leroy Templeton, against appellants and his coappellees, Horatio S. and Annie M. Garner, Mary C. Kimberlin and Mamie

E. Wilson, to recover damages for an alleged breach of certain covenants in a chain of warranty deeds executed by Horatio S. Garner and Annie M. Garner, his wife; James A. Wilson and Mamie E. Wilson, his wife; Albert C. Kimberlin and Mary C. Kimberlin, his wife; in the order named. The alleged breach consisted in the existence of and subsequent discharge by appellee Templeton of a certain municipal assessment which is alleged to have become a lien on the land conveyed prior to the first conveyance by Garner and his wife. The cause was tried by the court, a special finding of facts made, and conclusions of law stated thereon.

The substance of the special findings is as follows: On and prior to May 3, 1906, Horatio S. Garner was the owner in fee simple of certain described real estate in Marion County, and on that day entered into a written contract with George Brannon as follows:

"Indianapolis, Indiana, May 3rd, 1906. Cline & Wilkins, Agents. I will give the sum of Eighteen Thousand Dollars ($18,000.00) payable as follows: Seven Thousand ($7,000.00) Dollars in cash, balance in two equal payments payable on or before one and two years after date, with five per cent (5%) interest, payable semi-annually; for the real estate described as follows: (here follows description of real estate), being all the land I own in said section and township, same to be free and clear of all encumbrances, excepting taxes for the year 1906 payable in 1907, warranty deed and abstract showing good title to be furnished me. (Signed) G. H. Brannon.

I accept the above proposition with the above alterations this 3rd day of May, 1906. (Signed) H. S. Garner.

I accept H. S. Garner's alterations in the above proposition this 3rd day of May, 1906, at 4:30 o'clock P. M. (Signed) G. H. Brannon."

On May 8, 1906, Garner furnished an abstract of title to the real estate, which he claimed showed a good title in him, to said Brannon. The latter's attorneys claimed some question might be raised by future purchasers, and a decree quieting the title should be secured. Garner, while claim-

ing this was unnecessary, did institute suit, and on April 4, 1907, secured a decree quieting title to the land. Thereafter he demanded that Brannon accept a deed for the land and pay purchase price. Brannon delayed doing so, and made another claim of an apparent defect, demanding that there be a second suit to quiet title and decree obtained. Garner then informed Brannon he had an offer for the land in a much larger sum than that stipulated in the contract, and offered to rescind the contract. This Brannon refused to do, stating he would hold Garner on his contract. In the meantime Cline & Wilkins, real estate brokers, sued Garner and obtained a judgment for $360 for commission in making the sale to Brannon. Brannon then proposed to pay this judgment, which was to be considered a credit on the purchase price of the land, to which Garner consented. Brannon made the payment and procured Garner's receipt therefor, which included an agreement to procure another decree quieting title, and reads as follows:

> "Indianapolis, Ind., February 1, 1907.
> "Received of George H. Brannon the sum of Three Hundred and Sixty ($360.00) Dollars being part payment on fifty-five (55) acres of ground more or less * * * being all the land I own in said section, as per contract dated May 3rd, 1906, between George H. Brannon and H. S. Garner, and the said H. S. Garner hereby agrees to quiet title to the above described lands making title satisfactory to our attorney Elmer E. Stevenson, same to be deeded when quieted, free and clear of all incumbrances or liens, which amount is to be deducted from the cash payment of the purchase price of the above described real estate. Said sale is to be closed up within ten days after title is perfected by decree of court, and if said George H. Brannon fails to comply with said contract and close said sale within said ten days as above specified, he is to hereby forfeit to said H. S. Garner above said sum of three hundred and sixty dollars. (Signed) H. S. Garner."

Garner instituted a second suit to quiet title and secured a decree to that effect on June 24, 1907. On July 15, 1907,

appellant Wilson informed Garner that he (Wilson) was the owner of the contract dated May 3, 1906, and demanded that the land be conveyed to him. This Garner declined to do because Brannon had not assigned his contract in writing. Wilson then had Brannon endorse upon the contract: "Sold to James A. Wilson and ordered Garner deed property to him. (Signed) G. H. Brannon." On June 6, 1906, the board of public works of the city of Indianapolis, Indiana, adopted a resolution for the construction of a sewer in said city, and on July 13, 1906, the contract for the improvement was let to the Julius Keller Construction Company. The sewer was constructed and accepted by the board, and the real estate involved in this action was assessed with benefits amounting to $2,774.95, which assessment was confirmed on February 10, 1908, and became a lien upon the real estate. On July 13, 1907, appellee, Garner and wife, executed to appellant Wilson their warranty deed for the tract of land, which was duly recorded July 15, 1907; on December 23, 1907, appellant, Wilson and his wife Mamie E. Wilson (appellee), executed to appellant, Kimberlin, a warranty deed for the real estate, which was duly recorded December 26, 1907, and Wilson received the consideration therefor. On January 22, 1908, appellant, Kimberlin, and Mary C. Kimberlin, his wife (appellee), executed and delivered to appellee, Templeton, their warranty deed for the land, which was recorded the same day, and Templeton paid the consideration therefor to Kimberlin. Templeton became and is now the owner of the real estate. The municipal assessment became a valid and enforceable lien against the real estate on July 13, 1906; that same was not paid, and the assessment was assigned to the German Investment and Securities Company. On May 27, 1908, said company instituted proceedings to foreclose the lien of the assessment, Garner, Wilson, Kimberlin, Templeton and their wives being made defendants in the action. The German Investment and Securities Company obtained a judgment and decree foreclosing

the lien in the sum of $3,148.94. Templeton, in order to save the real estate from sale, on July 15, 1909, paid to the sheriff of Marion County the sum of $3,261.14, in full satisfaction of the lien and judgment, no part of which has been repaid to him. The court found there is due and owing Templeton from appellants on account of said assessment, interest and costs and judgment rendered thereon and attorney fees, a total of $3,411.14 with 6% interest from July 15, 1909 to the date of entering of this judgment, and he is entitled to recover costs of these proceedings from appellants. At the time of the execution of the deed by Garner to Wilson, said Garner and wife and Brannon and Wilson had no actual knowledge of the existence of the sewer assessment lien, but had such constructive notice as they are chargeable with by law.

Upon these facts the court stated its conclusions of law to be: (1) that the lien for the sewer assessment which was made after the contract of sale of the real estate in controversy, is not an incumbrance within the meaning of the warranty of appellees, Horatio S. and Annie M. Garner; (2) that appellee, Templeton, is not entitled to recover as against Garner and Garner, and that said Garner and Garner are entitled to recover their costs; (3) that appellee Templeton is entitled to recover judgment against appellants in the sum of $3,411.14 and interest thereon from July 15, 1909, together with costs of this proceeding; (4) that appellants are not entitled to recover or have any relief on their cross-complaint as against Horatio S. Garner and wife. Judgment was rendered in accordance with the findings and conclusions of law.

It is assigned that the court erred in overruling appellants' demurrer to the special answer filed by Garner and Garner to appellants' cross-complaint, and in each conclusion of law upon the facts found. Appellants concede that the errors assigned for a reversal present precisely the same question, and may all be determined from a consideration

of the conclusions of law upon the facts found, to each of which exception was duly taken.

The important question in this case is to determine the effect of the contract entered into between appellee, Garner and Brannon, and its subsequent effect upon appellants and appellee, Templeton. It is earnestly insisted on behalf of appellants that because of the fact that at the time the deed was actually executed to appellant, Wilson, although subsequent to the execution of the contract, a lien had attached to the real estate for certain sewer assessments made by the city of Indianapolis in a general plan of improvement in that section of the city, that there was a breach of the covenants of warranty made by Garner to Wilson, hence the primary liability of Garner as the remote grantor, under a rule which they insist is well established and amply sustained by authority in this State. There is an abundance of authority with respect to the liability of grantors in a chain of title, and that question need not be discussed here in order to dispose of the question involved in this appeal. If the lien which attached because of the public improvement mentioned was such a lien as was covered by the covenants of warranty in the deed made by Garner to Wilson under the facts stated, then the liability of Garner is established.

We think it may be conceded as a general rule that where there is a contract for the sale of real estate, the vendee becomes the equitable owner thereof, the vendor simply holding the title as security for the purchase money. The vendee being the equitable owner, secures all the benefits, and assumes all the risks of ownership. This doctrine is amply sustained in 1 Pomeroy, Eq. Jurisp. §368; 4 Pomeroy, Eq. Jurisp. §1406. This being an appeal to the equity side of the court, it is our duty to construe the contract so as not to give either party an unfair advantage. In the case of *Hunter* v. *Bales* (1865), 24 Ind. 299, 302, it is said: "In equity, a contract

for the sale of land is not merely executory, but the vendee becomes the owner, and the vendor is seized in *trust* for him, and has a mere lien on the land for the purchase money, upon the maxim that 'equity looks upon that as done which is agreed to be done.' The contract, however, which in equity will make him the owner, must be a valid contract; must be such that he has *a right to pray* a specific performance of it. Equity looks upon that as done which is thus agreed to be done, and it relates back to the contract." In the case of *Sutherland* v. *Goodnow* (1884), 108 Ill. 528, 48 Am. Rep. 560, the court quotes with approval from Bouvier's Dictionary as follows: "See Bouv. Law Dic. 495, title 'Sale', 15. At law a deed is essential to vest title to real estate, but in equity the title will be treated and protected as being where the parties have contracted it shall be, for that purpose holding the vendor as trustee of the legal title for the benefit of the vendee, while the latter is looked upon as trustee of the purchase money for the benefit of the vendor. Bisph. Eq. (2d ed.) 423; 2 Bouv. Law Dic., *supra."* See, also, *Wiseman* v. *Beckwith* (1883), 90 Ind. 185, 190; *Thompson* v. *Norton* (1860), 14 Ind. 187; *Broker* v. *Scobey* (1877), 56 Ind. 588, 593; *Caldwell* v. *Bank of Salem* (1860), 20 Ind. 294, 296; *Webster* v. *Major* (1904), 33 Ind. App. 202, 213, 71 N. E. 176. We take it, therefore, that this must be accepted as the sound doctrine to be applied to the facts in this case.

The case of *Carey* v. *Gundlefinger* (1895), 12 Ind. App. 645, 40 N. E. 312, is in its facts almost identical with the case at bar. It is expressly held in that case that a lien for a street assessment is not one covered by the covenants of a warranty deed. The reasons given therefor are equitable and just, and are amply sustained by authority. The same rule must apply to sewer assessments. The case of *Gotthelf* v. *Stranahan* (1893), 138 N. Y. 345, 20 L. R. A. 455, is an interesting case, and goes into

a full discussion of the principles involved in this case. The facts were as follows: The date fixed by the contract for the conveyance of certain city lots with covenants against incumbrances, was postponed a number of times for the mutual accommodation of the parties; finally the vendor tendered a conveyance with covenants of warranty; prior to that time, and subsequent to the original contract, assessments were made against the lots under the charter of the city in which they were located, for public improvements. The court held that such assessments were not incumbrances within the meaning of the contract, and that the vendor was not bound to warrant the title as against such assessments. "The contract to convey free from incumbrances ordinarily has reference to incumbrances or liens actually existing when the contract is executed, or thereafter created, or suffered by the act or default of the vendor. While the assessments in question constituted, under the charter of Brooklyn, liens on the lands assessed from the time of their confirmation by the common council, and are, in a strict sense, incumbrances thereon, we are of opinion that they are not incumbrances within the meaning of the contract. They did not diminish the value of the subject of the contract. The plaintiff will acquire what the defendant intended to sell and what he expected to receive, and, but for the postponement of the time of the execution of the deed, the plaintiff would have taken his title before the assessments were laid. This incident ought not to impose upon the defendant a loss *pro tanto* of so much of the purchase money." In the same case, it is also said: "It is impossible to suppose that the parties contemplated when the contract was executed that incumbrances created by the force of public law for improvements initiated after the making of the contract and intermediate that date and the time fixed for the conveyance should be paid by the vendor. If the contract can have this construction, then the plaintiff is entitled to prop-

erty not in the condition it was in when he contracted to purchase it, but an improved estate, improved at the expense of the vendor by the act of the city, which he could not control, initiated after the contract was made. This construction would compel the vendor to pay out of the purchase money the cost of an improvement which by so much has increased or will increase the value of the property, and the vendee would acquire property which he did not pay for."

It is earnestly insisted by appellants that the case of *Horner* v. *Lowe* (1902), 159 Ind. 406, 64 N. E. 218, together with many authorities cited, supports their contention, and that the principles therein stated are applicable to the facts in this case. It is our opinion that the facts in *Horner* v. *Lowe, supra,* and other cases cited by appellant are easily distinguishable from the facts in this case, and the doctrine here announced is not in conflict with the doctrine laid down in those cases.

Appellants also insist that if appellee Garner is to be relieved from the covenants of warranty on his deed, the same rule must be applied to appellants as to their 4. covenants of warranty, as they conveyed the property without knowledge of the existence of the lien imposed thereon. We think, however, that the distinction is made clear in the cases cited and relied on by appellee that where a lien is created by operation of law and not by the act of the vendor subsequent to the execution of the contract, and prior to the execution of the deed, the rule above stated, invoked in the case at bar, applies, whereas if the lien has already attached when the vendee acquires the property, and he disposes of it by warranty deed with the lien unsatisfied, then his covenants of warranty cover the lien so attached, and he is obliged under the rule to discharge it. This being the settled law, no error was committed by the court in overruling appellants' demurrer to the special an-

swer filed by Garner and Garner to their cross-complaint, neither did the court err in its conclusions of law.    Judgment affirmed.

NOTE.—Reported in 102 N. E. 160.    As to breach of covenant of warranty, see 14 Am. Dec. 53; 24 Am. St. 266; 122 Am. St. 852. See, also, under (1) 39 Cyc. 1612; (2) 9 Cyc. 587; (3) 11 Cyc. 1114, 1115; 39 Cyc. 1497.