NORTHGATE CONSTRUCTION COMPANY, INC. *vs.* STATE
TAX COMMISSION.

Suffolk. November 6, 1978. — February 1, 1979.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Taxation,* Sales and use tax, Exemption. *Housing.*

The imposition of sales and use taxes on materials used in the con-
struction of a turnkey project financed by the United States Depart-
ment of Housing and Urban Development did not run contrary to
any Federal policy. [206-207]
Materials used in the construction of a turnkey project by a private
developer under a contract whereby a municipal housing authority
was to buy the completed project were not exempt from sales and
use taxes under G. L. c. 64H, § 6(*f*). [208-209]

APPEAL from a decision of the Appellate Tax Board.
*Robert H. Quinn (Anne Hyde* with him) for the taxpay-
er.
*Terry Jean Seligmann,* Assistant Attorney General, for
the State Tax Commission.
WILKINS, J. We affirm the decision of the Appellate Tax
Board that a contractor is liable for sales and use taxes
on materials purchased and used in the construction of a
turnkey project for a local housing authority.
Beginning in 1971, Northgate Construction Company,
Inc. (Northgate), participated in the construction of two
low income housing projects for the elderly in Malden.
These projects, built for the Malden Housing Authority
(MHA), were approved by the United States Department
of Housing and Urban Development (HUD) and financed
pursuant to the United States Housing Act of 1937. See
current version at 42 U.S.C. § 1437 et seq. (1976). Each
project was undertaken pursuant to a plan of develop-

ment known as "turnkey construction." Under such a plan, a developer arranges for the construction of the project as provided in a contract of sale in which the local housing authority agrees to purchase the completed housing.[1] The developer has title to the land and is prohibited from selling the property to anyone other than the local housing authority. Northgate participated in the construction of each project for the selected developer.

Northgate argues that it was exempt from sales and use taxes assessed for materials purchased by it in its own name and used in the turnkey construction of low income housing projects because the imposition of such taxes would interfere with the Federal policy of providing low cost housing. Northgate argues, alternatively, that the sales of building materials and supplies were exempt from sales and use taxes under G. L. c. 64H, § 6(*f*), inserted by St. 1967, c. 757, § 1, because the structures were "owned by or held in trust for the benefit of" a governmental agency. See, as to use taxes, G. L. c. 64I, § 7(*b*), which generally incorporates by reference the sales tax exemptions.

1. The imposition of sales and use taxes on materials used in the construction of a turnkey project financed by HUD does not run contrary to any Federal policy. Northgate does not rely on any Federal statutory or regulatory exemption. It contends that the imposition of sales and use taxes will increase the cost of turnkey projects, that under conventional construction of a building for a governmental agency the materials purchased by the contractor are exempt from sales and use taxes, and that turnkey construction is used for reasons of economy where it is less costly than conventional construction procedures. Northgate's argument may have force if

---

[1] The details of the turnkey method of project construction are described in *Commissioner of Labor & Indus.* v. *Lawrence Hous. Auth.*, 358 Mass. 202, 204-205, 207 (1970).

addressed to the Legislature. See *S.J. Groves & Sons* v. *State Tax Comm'n*, 372 Mass. 140, 145 (1977). However, the issue is not whether the Legislature should have imposed sales and use taxes on materials used in turnkey construction projects, but rather whether there is any Federal policy which is contravened by the imposition of such taxes.

We have had occasion to recognize restrictions on State legislation in the face of clear contrary Federal policy in the field of public housing. In *Commissioner of Labor & Indus.* v. *Boston Hous. Auth.*, 345 Mass. 406 (1963), we held that the wage rates set for housing authority employees by the Commissioner of Labor and Industries under G. L. c. 121, § 26T, as then amended, could not be paid without prior approval of the Federal Public Housing Administration (PHA). We construed § 26T so as to avoid any conflict with the explicit budgetary requirements contained in the contract between the PHA and the Boston Housing Authority. 345 Mass. at 415-416. In *Commissioner of Labor & Indus.* v. *Lawrence Hous. Auth.*, 358 Mass. 202 (1970), we held that the procedures used in turnkey housing did not violate the Commonwealth's minimum wage law or statutory provisions concerning competitive bidding. We concluded that the Legislature intended that local housing authorities should be able to take advantage of available Federal assistance in developing low-rent projects. *Id.* at 209-210.

The case before us presents no similar conflict of Federal policy with State legislation. Not only is there no Federal statute or regulation barring the imposition of sales and use taxes, but also there is no contractual arrangement between HUD and the local housing authority which undertakes to regulate the subject. Indeed, the Low-Rent Public Housing Turnkey Handbook, issued by HUD in 1973, acknowledges that the developer's "total turnkey price" may include sales taxes on construction and equipment.

2. In the absence of a conflict with Federal policy, the only question remaining is whether the applicable Massachusetts statutes exempt materials used in a turnkey project from sales and use taxes. We conclude that they do not. On facts substantially identical with those of this case and based on statutory language substantially the same as G. L. c. 64H, § 6(*f*), the Supreme Court of Vermont has held that a prospective purchaser of a turnkey project is not an "owner" of the project and that the property is not "held in trust" for the prospective purchaser. *Pizzagalli Constr. Co.* v. *Vermont Dep't of Taxes*, 132 Vt. 496, 499-501 (1974).

Section 6(*f*) of G. L. c. 64H exempts from the sales tax "[s]ales of building materials and supplies to be used in the construction . . . of (1) any building . . . owned by or held in trust for the benefit of any governmental body or agency mentioned in paragraph (*d*)." Paragraph (*d*) refers to "the United States, the commonwealth or any political subdivision thereof, or their respective agencies."

The MHA did not have legal title to the buildings when they were being constructed by Northgate. The word "owner" has a "flexible meaning depending upon the other language of the particular statute in which it is employed and the purpose and aim of the statute." *Animal Rescue League of Boston* v. *Assessors*, 310 Mass. 330, 333 (1941). Northgate has cited no authority in support of the proposition that one who has a contract to purchase land at a future date is thereby an owner of that land. Such an expansive reading of the word "owner" is unwarranted where the statute specifically includes any building "held in trust for the benefit of" a governmental entity. See *Kirby* v. *Assessors of Medford*, 350 Mass. 386, 390-391 (1966). A determination of sales tax liability based on facts in existence at the time of the sale, and not on the possibility of the occurrence of future events, seems appropriate. If the project were never completed and delivered as required under a developer's agreement with the MHA, the exemption for which Northgate contends

would be inappropriate. Present ownership, however, whether direct or as a beneficiary of a trust, is immediately determinable.

The developer did not hold the project premises in trust for the benefit of the MHA. A person under obligation to construct a project and then to convey the property to another is not a trustee of that property for the benefit of the prospective purchaser. See *Laurin* v. *DeCarolis Constr. Co.*, 372 Mass. 688, 691 (1977); *Pizzagalli Constr. Co.* v. *Vermont Dep't of Taxes*, 132 Vt. 496, 500 (1974); 1 A. Scott, Trusts § 13 (3d ed. 1967); Restatement (Second) of Trusts § 13 (1959). The turnkey developer's obligation is contractual and not fiduciary.

*Decision of the Appellate*
*Tax Board affirmed.*